**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH WATKINS,** | : | **CIVIL NO. 1:CV-04-2808** |
| Petitioner, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| **RONNIE R. HOLT,** | : | |
| Respondent | : | |

**MEMORANDUM AND ORDER**

On December 27, 2004, Joseph Watkins, a federal inmate confined at the Federal Correctional Institution at Schuylkill, Minersville, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 challenging the denial of his good conduct time by the Bureau of Prisons (BOP). On January 25, 2005, Respondent was ordered to show cause why the writ should not be granted. (Doc. 5). A response was filed on February 14, 2005. (Doc. 6). Petitioner filed a traverse on February 25, 2005. (Doc. 7). On March 9, 2005, Respondent was directed to file a supplemental response addressing the portion of Petitioner's traverse labeled "Facts Regarding Exhaustion of Administrative Remedies." (Doc. 9). The supplemental response was filed on March 24, 2005. (Doc. 10). Petitioner filed a supplemental traverse on April 4, 2005. (Doc. 11). The petition is ripe for disposition. For the reasons set forth below, the petition will be denied.

I. Background.

In addressing a previously filed habeas corpus petition filed by Petitioner, the Court set forth the following detailed background of the Petitioner's sentencing history:

> Petitioner was arrested in the District of Columbia on charges of attempted distribution of heroin in violation of D.C.Code Title 33-541(a)(1) on July 18, 1986. He was released on August 3, 1996, pending trial. However, he was then re-arrested on a bench warrant on August 22, 1986. He remained in custody until November 25, 1986, the date of his sentencing, at which time he was sentenced to a term of five (5) to fifteen (15) years imprisonment, with execution of the sentence suspended and Petitioner to serve

three (3) years probation and enroll in, and complete, the Second Genesis Drug Program. On February 24, 1987, he was transferred to the Second Genesis Drug Program, where he remained until February 18, 1988.

He was taken back into custody on April 5, 1988, on a probation revocation warrant. On August 17, 1988, his probation was revoked and his sentence was modified to the lesser term of four (4) to fifteen (15) years imprisonment. At that time, he was afforded three hundred thirty-seven (337) days of credit for the following periods: July 19, 1986 through August 3, 1986; August 22, 1986 through February 24, 1987; and, April 5, 1988 through August 16, 1988. His "expiration full term" ("EFT") was set at September 13, 2002.

While serving his sentence, the Petitioner escaped from the Hope Village Community Corrections Center on January 3, 1991, and was not returned to custody until February 3, 1991. He then escaped from the Community Corrections Center #4 on March 8, 1993. He remained at large until September 27, 1993. The combined total of time he was at large was two hundred thirty-six (236) days. On April 29, 1994, he was sentenced on the escape charges to a thirty (30) day term of imprisonment which was to run consecutive to the previously imposed term. This resulted in a recomputation of sentence by the District of Columbia. The two hundred thirty-six (236) days of inoperative time and the thirty (30) day escape sentence resulted in a new EFT of June 6, 2003. (Doc. 10, R. 2).

He was released on parole on April 18, 1995, with a term of two thousand nine hundred forty four (2,944) days left to serve on his sentence. (Doc. 10, R. 5). Thus, he was to remain on parole until June 6, 2003. (*Id*.) However, a little over a year later, on July 2, 1996, the District of Columbia Board of Parole ("DC Parole Board") issued a warrant for Petitioner's arrest as Petitioner had violated conditions of his parole. Specifically, on September 30, 1996, Petitioner was arrested in Maryland on charges of false imprisonment, attempted robbery and assault. (Doc. 1, Exhibit G). He received a five (5) year prison sentence but was credited with two hundred forty-one (241) days of presentence service time. (Doc. 10, R. 4) The sentence was set to expire on January 3, 2000.

Upon expiration of his State of Maryland sentence, he was taken into custody pursuant to the July 2, 1996, parole violation warrant. At that time, he had served approximately 2273 days of his original fifteen (15) year sentence. His parole violator term was computed by the Bureau of Prisons (BOP) Records Center. Initially, an EFT of January 24, 2008, was arrived at based upon the fact that at the time the Petitioner was paroled he still had two thousand nine hundred forty-four (2944) days of his sentence left to serve. However, because he was eligible for statutory good time in the amount of seven

hundred seventy-three days (773), his statutory release date was set at December 12, 2005.

On January 3, 2001, although the United States Parole Commission issued a Notice of Action wherein the Petitioner's parole was revoked and none of the time spent on parole was to be credited, the hearing was continued in an effort to obtain additional information about the State of Maryland charge of Failure to obey all laws: Kidnaping. On July 17, 2001, the Parole Commission held a hearing to obtain the needed information. Following the hearing, the examiner recommended that the Petitioner be continued to a presumptive parole after service of ninety-six (96) months, with special drug and alcohol aftercare. (Doc. 10, R. 16). A Notice of Action was issued on August 17, 2001, which adopted the examiner's recommendation. (Doc. 10, R. 17). Petitioner's presumptive parole date is now set at September 29, 2004. (Doc. 10, R. 20, 21).

*Watkins v. United States*, Civil No. 1:CV-02-1903 (12/31/03 Order)(Kane, J). On April 13, 2004, Watkins was transferred to Bannum Place, Inc., a Community Corrections Center in Washington D.C. (Doc. 6, Exhibit (Ex.) A, Declaration of Charles H. McIntyre, Inmate, ¶ 22). On April 30, 2004, Petitioner was found with prohibited intoxicants. This infraction resulted in the forfeiture of sixty (60) days of Statutory Good Time (SGT) and he was returned to FCI-Schuylkill. On June 10, 2004, the United States Parole Commission ("the Commission") retarded Petitioner's parole date from September 29, 2004 until October 29, 2004 because of the disciplinary sanction. (*Id*. at ¶ 23).

On September 21, 2004, the Petitioner was again transferred to Bannum Place, Inc. However, less than a month later, on October 19, 2004, Petitioner was charged in an incident report with the Use of Drugs or Drug Items. He received a sanction of the loss of 400 days of SGT and was again returned to FCI-Schuylkill. (*Id*. at ¶ 24).

On November 1, 2004, the Commission ordered that Petitioner's Parole Effective date be retarded and that a Rescission Hearing be scheduled. On December 3, 2004, Petitioner's sentence computation was updated and it was discovered that his EFT should have been June 5, 2003, not May 9, 2003. The number

or days remaining to be served was re-computed as 2971 days with an EFT of February 20, 2008.  Petitioner is projected to earn a total of 320 days of SGT and seven days extra good time, which he earned while he was assigned to the community corrections center.  His mandatory release date, taking into account all available good time, is March 30, 2007.  (*Id*. at ¶ 26).

II.  Discussion.

Respondent seeks dismissal of the petition based on Petitioner's failure to exhaust the administrative remedies available to him.  The Court has authority under 28 U.S.C. § 2241 to review a Bureau of Prisons (BOP) sentence calculation, but may do so only after the petitioner has exhausted his administrative remedies against the BOP.  *United States v. Wilson*, 503 U.S. 329 (1992); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996); *United States v. Brann*, 990 F.2d 98 (3d Cir. 1993).

The Prison Litigation Reform Act (PLRA) requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).  Prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002): *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001).  "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000)(*quoting Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95

(S.D.N.Y. 1998).

The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004); *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill,* 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279.

The BOP has established an administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*., whereby a federal prisoner may seek formal review of any aspect of his imprisonment. Inmates must first informally present their complaints to staff and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at §542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. *Id*. at §§542.15(a) and 542.18. No administrative remedy appeal is considered to have been fully exhausted until it has been presented to, and denied by, the BOP's Central Office. (Doc. 6, Ex. B, Declaration of John E. Wallace, Attorney Advisor for the United States Department of Justice at the Federal Correctional Complex at Allenwood, Pennsylvania (Wallace Dec.), ¶ 5 citing 28 C.F.R. §542.15)).

The BOP maintains computerized indexes of all administrative grievances and appeals filed by inmates. On February 10, 2005, these records were examined to determine whether Petitioner had exhausted his administrative remedies with respect to the issues raised in this petition. It was found that Petitioner filed a challenge to his sentence computation on November 29, 2004, and that the grievance was denied on December 14, 2004. (Doc. 6, Ex. B. Attachment 1). "Watkins did not appeal the denial of this grievance until January

10, 2005. The Regional Director of the Northeast Region of the Bureau of Prisons denied the appeal as untimely and has asked Watkins to provide verification that the delay in filing the appeal was not his fault. Watkins has not provided any verification, and he has not filed a grievance with the Central Office." (Wallace Dec., ¶ 7).

Watkins argues in his traverse that he submitted his BP-10 on December 29, 2004, but that it was denied as untimely. He then stated "[n]evertheless, the petition BP-11 is in the Central Office with other information awaiting a response." (Doc. 7-2, p. 4). Respondent represents in the supplemental response that, contrary to Watkins's assertion, a supplemental review of BOP records was conducted on March 9, 2005, and the record does not indicate that the BOP Central Office has received any verification concerning the delay in the filing of the appeal or any other appeal of the decision of the BOP Regional Office as of that date. (Doc. 10, p. 4, Doc. 10-2, pp. 2-6). Petitioner does not dispute this in his supplemental traverse. (Doc. 11). Petitioner has failed to demonstrate exhaustion. Accordingly, the petition will be dismissed for failure to exhaust administrative remedies.

III. Order.

**AND NOW**, this 30th day of June 2005, **IT IS HEREBY ORDERED THAT**:

1. The Petition for Writ of Habeas Corpus is DISMISSED;

2. The Clerk of Court is directed to CLOSE this case.

           S/ Yvette Kane
           Yvette Kane
           United States District Judge